**FARMERS GRAIN DEALERS ASSOCIA-TION of Iowa, Appellant,**

v.

**Everett SATHER, Chairman, Charles Colby, Jr., Walter Potts, Jr., Harry Renaud and Clifford Custor, constituting the Board of Review of Assessments of Polk County, Iowa, Appellees.**

No. 58808.

Supreme Court of Iowa.

June 28, 1978.

Rehearing Denied Aug. 28, 1978.

Pryor, Riley, Jones & Aspelmeier, Burlington, and Carty & Jones, Winfield, for appellant.

J. R. McManus, Special Counsel and Dan Johnston, County Atty., Des Moines, for appellees.

Considered by MOORE, C. J., and LeGRAND, REES, HARRIS and McCORMICK, JJ.

REES, Justice.

This property tax appeal involves valuation of plaintiff's terminal grain elevator at Avon Lake for property tax purposes for the tax year 1971. After evidentiary trial the trial court held the valuation placed on the property as of January 1, 1971, by the assessor was correct and should be approved. We reverse.

The plaintiff filed its petition on June 29, 1971, and asserted therein the Polk County assessor had placed an assessed value on the elevator of $1,030,240, which was later reduced by the Board of Review to $877,295. In its original petition, plaintiff asserted the true value of the elevator was $1,008,000, so the assessed value should be $272,160. Defendants filed answer, and on September 6, 1974, plaintiff amended its petition alleging the assessed value to be $877,-395, but that the fair market value was $635,000, and the assessed value should therefore be $171,450.

There is no essential factual dispute in this case. The plaintiff is the owner of a 6,664,000-bushel grain elevator in Polk County near the town of Avon Lake. It is the largest grain elevator in Iowa; the next largest, to which reference is made in the record, had a 2,446,000-bushel capacity, and according to the testimony of witnesses, had been closed for some considerable period of time before it was sold.

Two appraisers called by plaintiff as expert witnesses placed valuations on the property. Both of the plaintiff's valuation witnesses were residents of Nebraska, and only one of them testified he had had experience in appraising properties in Iowa. After it was developed in the testimony that the witnesses had not personally bought or sold property in Polk County, the defendants objected to their testimony as incompetent, but the record does not disclose any ruling by the court on such objection.

One of the witnesses testified the market value of the elevator was $1,000,000, and the other testified the market value was $634,760, both opinions being based on sales of comparable elevators some of which were not in Iowa. One of the value witnesses calculated the value of plaintiff's elevator at $621,565, based on cost less depreciation.

The assessor made no attempt to employ the market value approach because he was unable to find comparable sales in Polk County, and calculated the value of the elevator at replacement less depreciation. One principal point of difference between the assessor's calculation and the values placed on the property by the expert witnesses for the plaintiff, was based on the fact one valuation witness allowed 74 percent depreciation because the elevator, according to his testimony, was "grossly oversized", whereas the assessor allowed only 15 percent for obsolescence. Another witness for plaintiff, who had been engaged in the elevator business for a number of years,

testified the ideal size for an elevator under present economic conditions and government grain regulations, would be one with a capacity of approximately 1,500,000 bushels.

The court found that plaintiff had failed to establish the court had jurisdiction and had also failed to produce competent evidence to show the assessment by the defendant Board was excessive or inequitable, and granted judgment to defendants. This appeal ensued.

The plaintiff states the following issues for review which it contends necessitate a reversal of trial court:

(1) That trial court erred in concluding the plaintiff "failed to sustain the burden of proof that the court had jurisdiction of the controversy, and for that reason the court would be powerless to grant relief in this proceeding".

(2) That the court erred in its findings and conclusion the plaintiff had failed to produce competent evidence to show the assessment of the property involved in the case was either excessive or inequitable.

■ I. With respect to plaintiff's first issue stated for review, it contends the trial court erred in finding the plaintiff had not proved facts necessary to vest the trial court with jurisdiction to hear the appeal of the tax assessment. The defendants' claim in this regard centers around the evidence or lack of evidence concerning plaintiff's written protest to the Board of Review and the notice to the Board of Review of the appeal to the district court.

Written protest to the Board of Review of an assessment is required under § 441.37, The Code, 1971. Notice to the Board of Review is necessary to give the district court jurisdiction to hear an appeal of a decision of the review board under § 441.39, The Code, 1971. We note a copy of the written protest and the notice of appeal to the Board, along with proof of service thereon, was attached to the original petition filed in the Polk County court.

The court file of the Polk County district court case which is before us reflects that the requisite jurisdictional notice of appeal was duly served upon the Board of Review of Polk County, Iowa, by serving Everett Sather, chairman of the Board. In its answer, defendants admitted that Sather was chairman of the Board, and that the Board adjourned on June 10, 1971. The return of service of the notice appears to be dated June 29, 1971, and was, therefore, served within the required 20 days after adjournment of the Board. There is, therefore, no merit to defendants' contention that the plaintiff omitted to prove it perfected an appeal within 20 days after the Board had adjourned and failed to prove it had filed a proper and timely notice of appeal.

The defendants further contend the plaintiff failed to prove the action taken on its protest by the Board of Review. Plaintiff's exhibit # 2, the assessor's card record, reflects the action taken by the Board on the taxpayer's protest. Further, in its answer to the plaintiff's petition, the Board admitted the allegations of the petition in which the plaintiff asserted that the Board in its official capacity prior to its adjournment on June 10, 1971, reduced the assessed value of plaintiff's property from $1,030,-240, the amount fixed by the Polk County assessor, to $877,295.

In *Grundon Holding Corp. v. Board of Review,* 237 N.W.2d 755, 757 (Iowa 1976), in speaking to an almost identical jurisdictional question having to do with the filing of a protest, we noted that the evidence endorsed on the assessor's valuation card introduced as a part of plaintiff's case, included a notation the protest was denied. We held there was no merit to the claim of the Board of Review that the trial court was without jurisdiction. The facts in *Grundon* are almost identical to those in the case before us here.

On the whole record, we find there was no merit in defendants' contention the trial court was without jurisdiction to hear and determine plaintiff's appeal. The trial court erred in that regard and we reverse, holding that the necessary jurisdictional facts are present to establish the trial court could have, and should have, proceeded to a determination of the plaintiff's appeal.

II. In its second issue stated for review, the plaintiff contends the trial court erred in its finding that the plaintiff failed to establish its burden of proof that the real estate assessment was either excessive or inequitable.

The plaintiff introduced the testimony of two disinterested witnesses, Fred Herrington and Donald Achord, who testified that the fair market value of the property was less than the market value as determined by the assessor. Plaintiff further asserts the assessor, in reaching his valuation, should have used comparable sales of elevators outside of the State of Iowa where available, and that defendants cannot contest plaintiff's evidence of out-of-state sales to establish value. Plaintiff claims that on the basis of the proof adduced by its valuation witnesses, the burden of proof shifted to the assessor to prove the market value for the property. Finally, the plaintiff contends that even if no evidence of comparable sales was available the assessor and ultimately the defendants erred in failing to take into account the earnings capacity, industrial condition and functional and economic depreciation of the elevator as required by § 441.21, The Code.

In *Bartlett & Company Grain v. Board of Review*, 253 N.W.2d 86, 87–88 (Iowa 1977), we dealt with appeals involving the valuation of inland elevators and had the following to say about the legal principles involved in such cases:

"The applicable legal principles are set forth in our statute and decisions. Code 1971, § 441.21 (all references are to that Code); *Tiffany v. County Board of Review in and for Greene County*, 188 N.W.2d 343 (Iowa); *Juhl v. Greene County Board of Review*, 188 N.W.2d 351 (Iowa); and *Maytag Co. v. Partridge* [210 N.W.2d 584 (Iowa)], supra. The ultimate question in tax valuation cases is the exchange value of the property as a unit—what it would bring between a willing buyer and willing seller if offered for sale. The exchange value may thus be equated to the market value. The exchange value is ordinarily to be ascertained by the *sales prices* approach. If and only if the exchange value cannot thus be readily established, it is to be ascertained by *other factors*—what the property would probably bring if offered for sale by consideration of its productive and earning capacity, industrial conditions, cost, physical and functional depreciation and obsolescence, replacement cost, and other relevant factors. Even under the sales prices approach, the nature and condition of the subject property must of course be considered in order to compare it to other properties which have been sold and to make adjustments to the amounts of sales prices of such other properties."

With reference to the burden of proof on protests to the Board of Review and appeals to the district court from decisions of the Board of Review, § 441.21, The Code, provides:

"The burden of proof shall be upon any complainant attacking such valuation as excessive, inadequate, inequitable or capricious; however, in protest or appeal proceedings when the complainant offers competent evidence by at least two disinterested witnesses that the market value of the property is less than the market value determined by the assessor, the burden of proof thereafter shall be upon the officials or persons seeking to uphold such valuation to be assessed."

While the plaintiff in this case, inhibited by the provisions of § 441.38, The Code, on appeal to the district court could not set out new grounds in addition to the grounds alleged in the protest to the Board of Review, it could properly introduce new evidence to support the grounds already lodged in the protest. Defendants cannot, therefore, complain about the introduction into the record on the appeal to the trial court of evidence of comparable sales, even though such evidence was not made available to the Board of Review. The evidence of comparable sales did go to the issues of whether the assessment was above its market value, and whether the assessor followed, or failed to follow, § 441.21 in arriv-

ing at his valuation of the property, which were asserted in the written protest.

■ On the basis of the foregoing authority, if the plaintiff produced such competent evidence from two disinterested witnesses, the defendants had the burden to prove the validity of the assessor's valuation. The plaintiff called and adduced testimony from two appraisers to show that the market value was less than the assessment of value as reached by the assessor. The record shows both appraisers were disinterested and were well qualified to give their opinions on the value of the plaintiff's elevator. One of these witnesses, Donald Achord, based his appraisal on what he considered were three comparable sales. Such sales occurred in 1971 and 1972 and involved elevators outside of Iowa, but in the Midwest grain area, with a capacity of 8,000,000 to 10,500,000 bushels. The sales of such elevators ranged from a price of 10 cents per bushel capacity to 20 cents per bushel capacity. On the basis of such sales, Achord estimated the market value of plaintiff's property to be $1,000,000.

The other witness, Fred Herrington, testified that he based his appraisal on what he considered to be eight comparable sales of elevators in the Midwest grain region from July, 1966 to February, 1973.

Such elevators ranged in size from 726,-000 bushels to 4,500,000 bushels, and priced on a per-bushel capacity basis, the sales ranged from zero to 69 cents per bushel. On the basis of such sales, in comparison with the plaintiff's property, he estimated the value of the plaintiff's elevator to be $634,760.

The defendants objected to the testimony of Achord and Herrington as incompetent since the opinions of the witnesses based on the comparable sales, were not within the personal knowledge of the witnesses, and that the sales referred to and used as comparables were outside of Polk County and the State of Iowa. The trial court found plaintiff did not produce competent evidence to prove its assertions but failed to specify in what way or for what reason the evidence was incompetent.

We cannot agree with defendant's contentions in this regard or with the trial court's conclusion that the evidence of the comparable sales testified to by plaintiff's valuation witnesses was not competent. In fact, most of the same sales were referred to by valuation witnesses in *Bartlett & Company Grain v. Board of Review,* supra. The fact that some of the sales were some distance from Polk County and most of them were outside of the State of Iowa did not render the appraisal testimony of the witnesses based on such sales incompetent. In *Bartlett,* 253 N.W.2d at 94, we said:

"Section 441.21 does not expressly restrict the search for sales of other properties to the taxing district. When from the nature of the property the market for the purchase and sale encompasses a wider area, the wider area becomes the field for investigation. This is necessary in order to give meaning to the sales prices approach in the statute. If in that situation the assessor restricts himself to his county or district, he casts upon taxpayers the burden of performing his task; they must go into the wider field to find sales of comparable properties. If the assessor cannot perform the task with his own staff, he can utilize an appraiser to assemble information."

Further, in *Bartlett,* 253 N.W.2d at 93, we said that sales of property do not necessarily become incomparable even if they happen some distance from the area of the property to be assessed.

■ We are forced to the ineluctable conclusion the plaintiff satisfied its burden of proof, and therefore under § 441.21, The Code, the defendants bore the burden to show the validity of their assessments. Obviously, the defendants were unable to carry such burden since they based their valuations on replacement cost minus depreciation and obsolescence, whereas the plaintiff established the market price could and should have been determined under the sales prices approach by the use of comparable sales, the preferred approach under § 441.21. See *Bartlett,* supra.

We conclude, therefore, the trial court was in error in its ruling that the plaintiff failed to establish the necessary jurisdictional facts to vest the trial court with jurisdiction to grant plaintiff the relief requested. Trial court further erred in concluding plaintiff had failed to establish by competent evidence that the assessed valuation placed upon its property by the assessor as of January 1, 1971, was either excessive or inequitable.

We, therefore, reverse the judgment of the trial court, and fix the fair market value of plaintiff's real estate for the year 1971 at $1,000,000. The defendant Board is directed to correct its records accordingly, and to certify the same to the Board of Supervisors of Polk County so that plaintiff's tax for the year 1971 may be recomputed on the basis of such assessment.

REVERSED.